J. W. DENEY et al., Appellants, v. J. M. COREY et al., Respondents.*

No. 3491; December 22, 1862.

Trial—Verdict Against Evidence.—A Verdict for Defendant, who has offered no evidence, in an action in which the plaintiff has proved plainly a prima facie case, cannot be sustained.

APPEAL from Sixteenth Judicial District, Mono County.

L. Guint for appellants; W. P. George for respondents.

SHAFTER, J.—This is an action to recover damages for an alleged trespass upon a mining claim of the plaintiffs, described as situated on "Last Chance Hill and about one hundred feet north of the claim known as the Real Del Monte claim in Mono County, California."

It is alleged in the complaint that on the eleventh day of December, 1860, the claim in question was located by the plaintiffs or by those to whose right they have succeeded, pursuant to the mining laws of the district in which the claim is situated. That the notice claimed seven hundred feet each way, running northeasterly and southwesterly, from the point where the notice was exhibited. That while the plaintiffs were in possession, and on or about the 1st of April, 1861, the defendants entered upon the premises and committed the trespass complained of, etc., taking out and carrying away the gold and silver quartz from said claim.

Most of the leading allegations of the complaint are denied in the answer, and the defendants, by way of special defense, say that on or about the 7th of December, 1860, they or those

---

* A rehearing in this case was granted April 17, 1863.

under whom they claim, located the ground in question and remained in possession thereof until about the middle of said month, when their claim was duly recorded in the mining records of the district as follows:

"We, the undersigned, claim six claims, including one for discovery which belongs to M. W. Ridgley, on the Aetna Quartz Lode, commencing at this notice and running 600 feet each way in a North Easterly and South Westerly direction on the Lode, situated about 60 feet Easterly from the Edward Everett Lode.

"Located Dec. 15, 1860. Filed for Record Dec. 18, 1860.

"Recorded Dec. 19, 1860.

"J. M. BROWLY."

(Signatures of parties.)

It is further alleged that the defendants have been in peaceable possession, etc., and that they alone have the right to enter upon the claim and take out rock, etc.

The facts of the defendants' alleged title are denied in the replication. The trial was by jury, and under the instruction of the court, special issues were drawn up and submitted to them. The issues, together with the findings of the jury thereon, were as follows: 1st. Is the vein in controversy the one located by the plaintiffs' grantors as the "Almaden Claim"?

Answer. No.

2d. Is the vein in controversy the one located by defendants as the "Aetna Claim"?

Answer. Yes.

3d. Is the vein in controversy the one referred to in the plaintiffs' recorded notice as the "Aetna Claim"?

Answer. Yes.

4th. Are there two distinct claims, or is the vein in controversy the only one, and claimed by both parties?

Answer. There is but one vein, and that is claimed by both parties.

5th. Did the plaintiffs comply with the rules and usages established and enforced, by placing stakes or other landmarks on the claim and posting the required notices?

Answer. The plaintiffs did comply with the rules established and in force.

On the foregoing issues and answers, judgment was entered for the defendants.

The plaintiffs moved for a new trial on the ground: 1st. Of insufficiency of the evidence to justify the findings of the jury, etc. 2d. Error of law occurring at the trial, etc. 3d. Misconduct and bias of the jury.

The motion was denied, and the plaintiffs appeal from the order and from the judgment.

We have examined the case upon all the points made in argument, but in deciding it shall confine ourselves to a single question upon which we conceive the merits of the appeal to depend.

The case was tried by the plaintiffs, or at least was put to the jury by them, upon the theory that there were two entirely distinct veins, and that the Aetna claim, belonging to the defendants, was located upon one of the two, and the Almaden claim, belonging to the plaintiffs, was located upon the other—the latter being the mining ground described in the complaint.

The defendants, on the other hand, contended that there was but one vein—the vein of the complaint—and that their location comprehended the section of that vein from which the mineral was removed.

Putting the case in the worst form for the plaintiffs, the jury were bound, in view of the evidence, to assume that the plaintiffs located a claim upon the vein in controversy as early as the 19th of December, 1860; and putting it in the strongest light for the defendants, the jury could not assume that the plaintiffs, by force of the estoppel given to them by the court, were precluded from denying anything except that the defendants had a claim "in the vicinity" of older date than that of the plaintiffs. Whether there were two veins or but one, and if two, whether both claims were in fact located upon the vein of the complaint, were open questions upon the evidence, not within the scope of the estoppel as limited by the court, and trammeled by no other demonstrated certainty. The jury, in their investigation of the two vein theory of the plaintiffs, and of the one vein theory of the defendants—and if they found that there were two veins, then in determining whether the older location of the defendants was on the vein of the complaint, or if they found that there was but one vein, then in determining whether both locations covered the same

section thereof—were confined entirely to evidence introduced by the plaintiffs, for the record shows that the defendants introduced none.

We have examined the evidence, as related to the findings of the jury in response to the first four questions submitted to them.   There is no conflict in the evidence, and the facts found are directly opposite to those which the evidence, and all of the evidence, tended to prove.

The plaintiffs put a map in evidence made by the county surveyor, and proved its correctness by a witness intimately acquainted with the localities.

There are two distinct veins or lodes represented upon the map, running in a northeasterly and southwesterly direction and parallel to each other, with a space between them of about thirty-four feet.   The eastern vein is designated as the "Almaden Quartz Lode," and the point on the lode where the plaintiffs' notice was stuck up is indicated.   The point also is represented at which the defendants tapped the Almaden vein, and that point is within the limits of the plaintiffs' claim on the vein, as those limits are established by the records of the district and the parol proof accompanying them. The western vein is described on the map as a "Quartz Lode." There is a tree represented as growing on the line of the lode, named on the map as the "Aetna notice tree."

The map establishes, first, the plaintiffs' theory of two lodes, and second, that the Aetna claim was located upon the western, and the plaintiffs' upon the eastern, lode.   In the face of this testimony however, and it was all the testimony upon the subject, the jury found that there was but one vein.

But the discussion may be carried a step farther.   Waiving the objection to this finding, and assuming that there was but one vein—and that the vein described in the complaint; and further assuming that both locations were on that vein, as the plaintiffs' location incontestibly was; and further assuming that the defendants' claim on that vein, somewhere "in the vicinity" of the plaintiffs', was older than the plaintiffs' by some three days—how were the jury justified in finding, as they did in effect, that the older claim of the defendants included that section of the vein from which the mineral was abstracted?   On the proofs and all of the proofs, that section was manifestly within the limits of the plaintiffs' claim—how

did it become manifest to the jury that it was within the limits of the older claim of the defendants also?

The existence of a prior and better claim to the plaintiffs' location was alleged in the answer, and the averment was denied in the replication. The burden of proof was therefore upon the defendants.

As already stated, the defendants introduced no evidence, and if the finding of the jury had any basis, it must be found in the evidence of the plaintiffs.

In the record of the plaintiffs' claim filed on the 19th of December, 1860, their location is described as "situated about fifty feet southeasterly from the Aetna lode on Real del Monte Hill." This passage in the record tends to prove, first, the prior existence of the "Aetna Claim," and second, that the two claims, instead of being identical in space, were to that intent different and diverse. Further, there was no evidence showing the dimensions of the defendants' claim on the vein. For aught the jury could know to the contrary, the Aetna claim was limited to a hand breadth. But however that may be, the descriptive passages taken from the record of the plaintiffs' claim, the map, and the testimony by parol, all tended to prove directly that the defendants' older claim was not to any extent identical with the plaintiffs' in position.

The counsel of the plaintiffs insist that on the fifth finding of the jury the court below erred in not ordering judgment for the plaintiffs.

The fifth finding disassociated from the other findings, and taken in connection with the admissions in the pleadings, might, perhaps, warrant a judgment for the plaintiffs. But the court below, in considering of its judgment, was bound to notice and accept all the findings, and four of them not being consistent with a judgment for the plaintiffs, the motion for such judgment was properly overruled.

Judgment reversed and new trial granted.

We concur: Sanderson, C. J.; Sawyer, J.; Currey, J.